**STERNER AERO AB and Various Underwriters At Lloyds, Plaintiffs-Appellants,**

v.

**PAGE AIRMOTIVE, INC., et al., Defendants-Appellees.**

No. 73-1810.

United States Court of Appeals, Tenth Circuit.

Argued March 21, 1974.

Decided June 10, 1974.

Rehearing Denied July 1, 1974.

Clyde A. Muchmore of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (Ben L. Burdick of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma

City, Okl., and Harold B. Carter, Jr. and A. Gordon Grant, Jr. of Montgomery, Barnett, Brown & Read, New Orleans, La., on the brief), for appellants.

Gary C. Bachman, Oklahoma City, Okl., for Page Airmotive, Inc.

Clyde J. Watts of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl. (William H. Wilson of Rhodes, Hieronymus, Holloway & Wilson, and Burton J. Johnson of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., on the brief), for Thunderbird Aviation, Inc.

Before HILL and DOYLE, Circuit Judges, and DURFEE,* Judge.

WILLIAM E. DOYLE, Circuit Judge.

The issue presented to us in this appeal is whether the trial court erred in granting defendants' motion for summary judgment. Defendant Page Airmotive had rebuilt an airplane engine and sold it to Sterner Aero AB, which was in Sweden. This engine failed on a take off, causing the plane to go down. The forced landing was in a lake and there were no personal injuries, but the plane itself was damaged and the demand is for some $50,000.

The engine, which was purchased from Page Airmotive, was a Pratt-Whitney R–1340–AN–1. The purchase was made on April 26, 1968 and the malfunction occurred on May 28, 1969. The action herein is in negligence in which the doctrine of *res ipsa loquitur* is invoked and also in implied warranty.

At the time of the crash the plane had been in operation for one year and had a total of 538 hours of flying time. The parties to the sale had entered into a warranty agreement which was carefully negotiated through correspondence of the parties. This correspondence occurred over a month prior to the completion of the sale.

First, there was a standard written warranty which provided that:

Major overhaul of aircraft engines and accessories shall be covered by this warranty for the first 100 hours of operation or the first 90 days after acceptance of delivery, or if delivered by shipment, receipt of shipment by the customer.

. . . . . .

This warranty is expressly in lieu of any and all other warranties or representations express or implied.

However, by letter dated April 15, 1968, it was agreed that the 90 day warranty be extended to six months or 100 hours, whichever occurred first.

The question is whether this exclusion of all other warranties, express or implied, effectively barred the present action, even though a tort, so as to justify the granting by the court of the defendants' motion for summary judgment. In granting the motion for summary judgment the trial court noted that the contracting parties were knowledgeable and that they had carefully negotiated the terms and conditions of the sale. The trial court then went on to say:

In view of this negotiated contract between knowledgeable parties covering the specific warranties agreed upon, the Court is of the opinion that § 402–A, Restatement of Torts (2nd) does not apply. The Court knows of no law which prohibits knowledgeable parties from agreeing upon the terms of a warranty of merchandise or materials sold. This is not a case between an ordinary purchaser of consumer goods who relies upon the expertise and knowledge of the seller or manufacturer. The parties to this case had an equal bargaining position, and could contract upon such terms and conditions as they saw fit.

The trial judge added that the engine had accumulated engine running time of 538 hours (almost its recognized life). It had been in use for more than one year so that the engine hours and the restrictions had been far exceeded when the failure occurred.

Finally, the trial court ruled that the limitations of hours and of time con-

* Honorable James R. Durfee, United States Court of Claims, sitting by designation.

tained in the warranty precluded a lawsuit under implied warranty or § 402A.

## I.

■ Oklahoma law has long recognized the contractual disclaimer of express and implied warranties. Allis-Chalmers Mfg. Co. v. Hawhee, 187 Okl. 670, 105 P.2d 410 (1940). At present such waiver continues to be allowed under the specified provisions of 12A O.S. A. § 2–316.

Like many states, Oklahoma first developed the concept of liability without fault in products defect cases under the rubric of implied warranty. This approach started as a contractual one, and as such often carried contractual defenses such as the requirement of privity, the requirement of giving notice of defects and the right of contract disclaimers. *See* discussion in Prosser, Torts (2d ed. 1971), pp. 655–58. These contract defenses caused complexity as well as injustice and this caused many states to abandon these defenses. Oklahoma took this step as far as the requirement of privity in products liability cases. Marathon Battery Co. v. Kilpatrick, 418 P.2d 900 (Okl.1966).

■ Many jurisdictions have gradually abandoned the whole concept of implied warranty in products liability, adopting instead the simpler and more manageable concept of strict liability in tort as exemplified by § 402A, Restatement of the Law of Torts 2d. This strict liability in tort is substantially similar to implied warranty stripped of the contract defenses of privity, notice, disclaimer and the other contract attributes.

■ Very recently the Oklahoma Supreme Court followed the lead of other jurisdictions in taking this final step. It has adopted the concept of strict liability in tort as it is defined in § 402A of the Restatement. Its only reservation

is in designating it as Manufacturers' Products Liability. This significant development is fully set forth in Kirkland v. General Motors, Okl., 521 P.2d 1353, decided April 23, 1974.[1] It is important to note that *Kirkland* was decided *after* the district court ruled on appellee's motion for summary judgment at bar, on August 22, 1973. Indeed this appeal had been filed and the briefs had been submitted at the time of the announcement of the decision.

While in most instances it is immaterial whether plaintiff seeks to recover (or the jurisdiction allows recovery) under the theory of strict liability in tort or under implied warranty without privity requirements, the question is vital in the case at bar because the trial court was asked to decide the legal effect of a negotiated contractual disclaimer between plaintiff and defendant Page of all implied warranties, a waiver provision which, being clearly expressed and entered into through negotiation between parties of relatively equal bargaining power, would be legally permissible in Oklahoma. Such a waiver would not appear to abrogate plaintiff's right of action in tort under strict liability, as such a right exists in Oklahoma, for it does not mention any waiver of strict liability.

■ However, given the clear language of the waiver provision together with the fact that the total warranty was freely entered into following express negotiations by the parties, we have to conclude that its intent was to preclude all future rights to recover for product defects which had their legal basis in express or implied warranties (other than the express warranty negotiated by the parties in the agreement).

■ Under the *Kirkland* opinion, breach of implied warranty is no longer an appropriate remedy for recovery in products liability cases, except as pro-

---

1. The Oklahoma Supreme Court issued an earlier opinion in *Kirkland* on January 22, 1974. This opinion was withdrawn and replaced by the present, revised opinion. The sole revision is contained on page 1365, clarifying the status of the breach of implied warranty theory relied upon in *Marathon Battery*.

vided in the Uniform Commercial Code. The implied warranty theory is now merged under Oklahoma law into the theory and doctrine of Manufacturers' Products Liability. (*See* page 1365 of the *Kirkland* opinion).

## II.

Having concluded that the result of limiting defendants' warranty liability was to bar any suit based upon implied warranty, the remaining question is whether plaintiff has tort claims in negligence and strict liability.

■■ It is our conclusion that the disclaimer provision was *not* effective to bar an action based upon Manufacturers' Products Liability as that doctrine has been defined in Kirkland v. General Motors Corp., *supra*. The *Kirkland* case involved an allegedly defective seat back adjustment mechanism in a 1969 Buick automobile. The Oklahoma Supreme Court decided that traditional concepts of contract law are inapplicable in Manufacturers' Products Liability cases. We construe this as precluding the defendants from asserting the existence of a contractual disclaimer provision as a valid defense to liability.[2]

■ The *Kirkland* decision delineated the three essential elements (set forth in § 402A) which are necessary to establish a case in Manufacturers' Products Liability: *First,* plaintiff must prove that the product was the cause of the injury; *second,* plaintiff must prove that the defect existed in the product at the time it left the manufacturers' possession and control; and *third,* plaintiff must prove that the defect made the product "unreasonably dangerous", that is, dangerous to an extent beyond that which would be contemplated by the ordinary purchaser.

We do not prejudge the evidence. As of now it cannot be determined to be sufficient to satisfy the standards of Oklahoma's new Manufacturers' Products Liability doctrine. This decision must await the upcoming trial. We are mindful that the Oklahoma Court's pronouncement was not rendered until after the District Court had granted summary judgment in the case at bar. In view of this, the action must necessarily be remanded for trial on the issue of products liability.

■ Nor is the plaintiff Sterner necessarily foreclosed from asserting the doctrine of Manufacturers' Products Liability because it is a corporate entity which had contract negotiations with the defendant. Although plaintiff may be considered an expert in the field of aviation generally, there is no evidence to establish plaintiff's specific expertise in the manufacture of airplane engines or to preclude it from being classified as a consumer in the purchase of the engine in question. This issue must also await a trial and full development of the facts.

■ Kirkland v. General Motors Corp., *supra*, compels the conclusion which we have reached. The products liability law established by it operates prospectively as to all cases set for trial after April 23, 1974 and must therefore apply to the present action upon remand.

## III.

We next consider whether the warranty exclusion or limitation clause also precludes an action in negligence. On this we conclude that it does not.

■ Although a party to a contract may limit or eliminate liability for his own negligence if he is on an equal bargaining footing with the other con-

---

2. The Court in Kirkland quoted with approval portions of Comment m to the Restatement of Torts 2d § 402A, which states:

The basis of liability . . . is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties . . . The consumer's cause of action does not

depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands.

tracting parties, *see* Mohawk Drilling Co. v. McCullough Tool Co., 271 F.2d 627 (10th Cir. 1959), at the same time, such contractual provisions are not the favorites of the law and hence are strictly construed. Standard Ins. Co. of New York v. Ashland Oil and Refining Co., 186 F.2d 44 (10th Cir. 1950); Gulf C. & S. F. Ry. Co. v. Anderson, 120 Okl. 60, 250 P. 500 (1926). Based on this judicial approach to the subject, a necessary requisite to recognition of the negligence disclaimer clause is that such a provision must be clear, explicit and unambiguous in its intention to exculpate a contracting party from the consequences of its own negligence. Standard Ins. Co. of New York, *supra.*

The particular facts of a case are capable of changing the decision as to whether liability in negligence is limited. *See* Kansas City Power and Light Co. v. United Telephone Co. of Kansas, 458 F.2d 177 (10th Cir. 1972). Under some circumstances public policy prevents the enforcement of such contractual provisions, *see* Gulf C. & S. F. Ry. Co. v. Anderson, *supra,* and the particular form of the contractual language also affects the result. *See* Standard Ins. Co. of New York, *supra.* If the disclaimer is not explicit in its terms it cannot be effective to limit liability. *See* Champlin v. Oklahoma Furniture Manufacturing Co., 269 F.2d 918 (10th Cir. 1959).

It seems clear, therefore, in the case at bar that the language referring as it does only to warranties cannot possibly engage and exclude an action in negligence. It fails here for lack of explicit language evidencing intent to exclude a negligence action. Therefore, we must hold that the trial judge's ruling embracing negligence as well as warranty is erroneous. We recognize, of course, that there may be no negligence action under the facts of the case, when those facts are finally developed, and we are to be understood as saying only that the contract does not preclude the assertion of such a remedy.

## IV.

Defendants contend that plaintiff's failure to file affidavits in response to the *motion for summary judgment* constituted non-compliance with Rule 56(e) and thereby compelled the court to grant summary judgment.[3]

We must disagree with defendants' contention. The record reveals that the defendants supported their motion for summary judgment with uncontroverted requests for admissions of fact that the aircraft engine operated satisfactorily for 538 flying hours and for more than one year after the sale. However, the admission of these particular facts does not preclude the existence of other genuine questions of fact in the case, nor does it remove the issues of negligence or strict liability. The mere fact of continuous safe use of a product is not by itself conclusive evidence that the product was not defective. *See* Pryor v. Lee C. Moore Corp., 262 F.2d 673 (10th Cir. 1958). Therefore, despite plaintiff's failure to file opposing affidavits, there still exist material questions of fact and law to be determined in the case at bar so that the trial court acted prematurely in granting defendants' motion for summary judgment on the issues of negligence and strict liability. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Riggs v. British Commonwealth Corp., 458 F.2d 449 (10th Cir. 1972).

Accordingly, the judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

---

3. The pertinent portion of Rule 56(e) provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.