**MID CONTINENT AIRCRAFT CORPORATION, Petitioner,**

v.

**CURRY COUNTY SPRAYING SERVICE, INC., et al., Respondents.**

No. B–7030.

Supreme Court of Texas.

July 12, 1978.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, H. C. Pipkin, Jr., Amarillo, for petitioner.

Aldridge, Harding, Aycock & Actkinson, Johnny W. Actkinson, Farwell, for respondents.

DANIEL, Justice.

This is a products liability case which presents the question of whether, in an "as is" sale to a commercial buyer, the seller's disclaimer of liability for physical damage caused to the product itself is effective under the Uniform Commercial Code.

·Defendant Mid Continent Aircraft Corp. is a Missouri corporation engaged in the business of buying and selling small aircraft. It sold a reconditioned and overhauled single engine spray plane to the plaintiff, Curry County Spraying Service, Inc., a New Mexico corporation, to be used in Curry County's business of spraying crops. The plane was acquired by Mid Continent from co-defendant, Bobby Shivers, d/b/a Shivers Flying Service in Vernon, Texas, who had purchased the plane in a wrecked condition. Shivers repaired the airframe of the plane and had the engine overhauled by co-defendant, Robert Hawkins, a Federal Aviation Administration licensed engine mechanic, who maintained the independent Hawkins Aircraft shop in Quanah, Texas. In the transaction between Mid Continent and Curry County, the contract of sale stated that the purchase of the airplane was "subject to the terms and conditions of an 'as is' sale."

Curry sued Shivers, Hawkins, and Mid Continent. The trial court, without aid of a jury, held that all three of the defendants were liable in tort in spite of the "as is" provision in Curry County's purchase contract. Only Mid Continent appealed and the Court of Civil Appeals affirmed. 553

S.W.2d 935. The judgment against Shivers and Hawkins has become final. The cause of action against Mid Continent is severed and the judgments of the courts below as to Mid Continent are reversed. Judgment is here rendered that plaintiffs take nothing against Mid Continent.

Curry County had operated the rebuilt plane for approximately 30 hours when the engine failed and the plane crashed while spraying insecticide on crops in Parmer County, Texas. The crash stemmed from Hawkins' failure to attach a small crankshaft gear bolt lock plate when the engine was overhauled. Because of the missing lock plate, the gear bolt failed to remain tight and permitted the crankshaft gear to become loose, separating approximately $5/16$ of an inch from the rear of the crankshaft. The timing dowel pin that anchors the gear on the crankshaft was sheared off, causing the gear to stop rotating. The ignition magnetos, which are turned by the crankshaft gear, stopped; thus killing the engine. Without power, the pilot made a forced landing on a rough country road. This resulted in substantial damage to the fuselage and wings of the plane. However, the pilot suffered no personal injury and no property other than the aircraft itself was damaged.

In this action against the three defendants, Curry County alleged negligence, breach of warranty, and strict liability. Curry County's insurer, who had paid a substantial portion of the cost of repairing the airplane and thus was subrogated to part of Curry County's cause of action, was joined as a party plaintiff. Mid Continent filed a cross-action against Shivers and Hawkins for contribution or full indemnity. However, on joint motion of Mid Continent and Shivers, the cross-action was severed from this suit for a separate trial.

In rendering judgment for Curry County and its insurer, the trial court held the defendants jointly and severally liable for the amount of $4,658.49 for damage to the airplane and $3,690.00 for its loss of use. Hawkins was found to have been negligent in failing to install the crankshaft gear bolt lock plate. Shivers and Mid Continent were

held liable under strict liability in tort as sellers of the airplane in the business of selling such a product with a defect that rendered it unreasonably dangerous.

As indicated, only Mid Continent appealed. The Court of Civil Appeals, with one justice dissenting, held that Curry County was entitled to recover from Mid Continent for physical damage to the product itself under strict liability in tort as defined in Section 402A, Restatement, Second, Torts (1965). It was also held that the "as is" disclaimer of warranties was not effective to absolve Mid Continent of strict liability in tort. The Chief Justice dissented, stating that she would not have extended strict liability to cover the loss in this case. Mid Continent's application for writ of error was granted on the single issue of liability. The correctness of the measure of damages is not contested by the parties.

Heretofore, Texas courts have not been presented with the issue of whether a seller can contract against liability for harm caused by a defective product to itself. The question is whether injury to the product itself is a type of loss that requires contract language explicitly allocating the loss to the buyer before the seller can avoid liability, or should a general contract of purchase "as is" be sufficient to place the loss on the buyer?

### TYPE OF LOSS

Pivotal to the question of disclaimer applicability is the determination of whether the product loss is recoverable under a contract theory of breach of warranty or whether it is a tort loss. Generally, disclaimers are enforced less readily in strict liability cases than in those of contract warranty. *McMillen Feeds, Inc. v. Harlow,* 405 S.W.2d 123 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.); *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146 (3d Cir. 1974); *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir. 1974); *Vandermark v. Ford Motor Company,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). *See* Restatement, Second, Torts § 402A, comment m (1965). Therefore, the

type of loss is relevant to the determination of a disclaimer's validity.[1] Moreover, a decision on a disclaimer's validity without clearly identifying the type of loss and liability involved would be contrary to the recent writing which separates contract warranties from strict liability in products cases. *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977).

Strict liability in tort and contract have had an entangled relationship in the area of products liability. The entanglement is to be expected since strict liability resulted from the combination of tort and contract theories. *See Shamrock Fuel & Oil Sales Company v. Tunks,* 416 S.W.2d 779 (Tex. 1967); *Jacob E. Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942). With the codification of the Uniform Commercial Code, Tex.Bus. & Comm.Code Ann. §§ 1.101–9.507, and the adoption of Section 402A, *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967), the theoretical bases of contract and strict liability have been separated and firmly established. *Nobility Homes of Texas, Inc. v. Shivers, supra.*

The applicability of strict liability has been defined in Texas for personal injuries resulting from unreasonably dangerous products. *Bristol-Myers Company v. Gonzales,* 561 S.W.2d 801 (Tex.1978); *General Motors Corp. v. Hopkins,* 548 S.W.2d 344 (Tex.1977); *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Crocker v. Winthrop Laboratories, Inc.,* 514 S.W.2d 429 (Tex.1974); *Pittsburg Coca-Cola Bottling Works v. Ponder,* 443 S.W.2d 546 (Tex.1969); *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex. 1969); *McKisson v. Sales Affiliates, Inc.,*

*supra.* Physical injuries to a consumer's other property caused by a defective product has also been held to be included under strict liability. *O. M. Franklin Serum Company v. C. A. Hoover & Son,* 418 S.W.2d 482 (Tex.1967).

The present case involves an unreasonably dangerous product whose defect has caused harm to itself. No personal injury or injury to other property was involved. The critical question is whether, in a commercial sale, strict liability should be extended to cover loss resulting from damage to the product itself.[2]

Texas has recently adopted the rule that economic loss resulting from a product with defective workmanship and materials is not recoverable in strict liability. *Nobility Homes of Texas, Inc. v. Shivers, supra.* That loss is merely loss of value resulting from a failure of the product to perform according to the contractual bargain and therefore is governed by the Uniform Commercial Code.

Mid Continent contends that the damage to the airplane in the present case is also an economic loss under the reasoning of *Nobility Homes.* It argues that there is no difference between a product that is unusable because of defects and one that causes physical harm to itself because of a defect that is unreasonably dangerous. While Texas courts have not before considered this question, it has arisen in other jurisdictions. There is no concensus in the decisions. Some courts have concluded that the loss is recoverable under strict liability. *Cloud v. Kit Manufacturing Company,* 563

---

1. Cases from other jurisdictions have considered whether a seller has avoided liability for the injury a product causes to itself through a disclaimer clause. However, most of those courts determine the validity of the disclaimer without discussing the impact the nature of the loss has on their decisions. *K-Lines, Inc. v. Roberts Motor Company,* 273 Or. 242, 541 P.2d 1378 (1975); *Delta Airlines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239 (5th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146 (3d Cir. 1974); *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir. 1974); *Delta Air-*

lines, Inc. v. Douglas Aircraft Company, 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (Ct.App.1965). *Cf. Haugen v. Ford Motor Company,* 219 N.W.2d 462 (N.D.1974).

2. *Barnett v. Ford Motor Company,* 463 S.W.2d 33 (Tex.Civ.App.—Waco 1970, no writ), assumed without discussion that loss resulting from damage caused by an unreasonably dangerous product to itself was recoverable in strict liability. *See also Melody Home Manufacturing Company v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

P.2d 248 (Alaska 1977); *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239 (5th Cir. 1974); *Sterner Aero AB v. Page Airmotive, Inc., supra; Keystone Aeronautics Corp. v. R. J. Enstrom Corp., supra; Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 206 N.W.2d 414 (1973); *Arrow Transportation Company v. Fruehauf Corp.,* 289 F.Supp. 170 (D.Or.1968). Others adopt the position that the loss is of a contractual nature and therefore covered by the Uniform Commercial Code. *Long Manufacturing, Inc. v. Grady Tractor Company,* 140 Ga.App. 320, 231 S.E.2d 105 (1976); *Long v. Jim Letts Oldsmobile, Inc.,* 135 Ga.App. 293, 217 S.E.2d 602 (1975); *Cf. Mike Bajalia, Inc. v. Amos Construction Company, Inc.,* 142 Ga. App. 225, 235 S.E.2d 664 (1977); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Company,* 97 Idaho 348, 544 P.2d 306 (1975); *Cooley v. Salopian Industries, Ltd.,* 383 F.Supp. 1114 (D.S.C.1974); *Hawkins Construction Company v. Matthews Company, Inc.,* 190 Neb. 546, 209 N.W.2d 643 (1973). The nature of the loss resulting from damage that a defective product has caused to itself has received the attention of several commentators. Dean Page Keeton writes:

> "A distinction should be made between the type of 'dangerous condition' that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory." [3]

■ The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial practices. Tex.Bus. & Comm.Code Ann. § 1.102. For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms should not be nullified by applying strict liability when the parties have contracted otherwise. Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved. Some losses resulting from product transactions are best covered by contract liability under the Code. *See Nobility Homes of Texas v. Shivers, supra.*

■ Strict liability arose initially to compensate consumers for personal injuries caused by defective products, although it was sometimes referred to as "implied warranty in law as a matter of public policy." *Jacob E. Decker & Sons, Inc. v. Capps, supra; McKisson v. Sales Affiliates, Inc., supra; Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962). It was reasoned that injured consumers should not be made to depend on the intricacies of sales law for compensation. *Greenman v. Yuba Power Products, Inc., supra,* 377 P.2d at 901. The present case does not involve personal injury but concerns only economic loss to the purchased product itself. Distinguished from personal injury and injury to other proper-

**3.** 32 SW.L.J. 1, 5 (1978). See and Compare Ribstein, Guidelines for Deciding Product Economic Loss Cases, 29 Mercer L.Rev. 493 (1978); Sales and Perdue, The Law of Strict Liability in Texas, 14 Houston L.Rev. 1 (1976); McNichols, Who Says That Strict Tort Disclaimers Can Never Be Effective? The Courts Cannot Agree, 28 Okla.L.Rev. 494 (1975); Parker, The Warranty Disclaimer v. Manufacturers' Products Liability, 10 Tulsa L.J. 612 (1975);

Wade, Is Section 402A of the Second Restatement of Torts Preempted by the UCC and Therefore Unconstitutional? 42 Tenn.L.Rev. 123 (1974); Comment, Products Liability in Commercial Transactions, 60 Minn.L.Rev. 1061 (1976); Comment, Strict Liability: Recovery of "Economic Loss," 13 Idaho L.Rev. 29 (1976); Comment, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917 (1966); Note, 19 South Tex.L.J. 337 (1978).

ty, damage to the product itself is essentially a loss to the purchaser of the benefit of the bargain with the seller. Loss of use and cost of repair of the product are the only expenses suffered by the purchaser. The loss is limited to what was involved in the transaction with the seller, which perhaps accounts for the Legislature providing that parties may rely on sales and contract law for compensation of economic loss to the product itself. Tex.Bus. & Comm.Code Ann. § 2.715(b)(2).

The consumer protection needs upon which strict liability is based are not sufficiently strong to impose that theory of recovery over the existing sales law remedies for Curry County's loss in this case. In transactions between a commercial seller and commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code. Curry County's cause of action for the damage of the airplane lies in breach of warranty as provided by the Code.

## THE "AS IS" DISCLAIMER

Liability in warranty arises where damage is caused by the failure of a product to measure up to the seller's express or implied representations. Tex.Bus. & Comm.Code Ann. §§ 2.313–2.315. Curry County's ability to recover for the damage to the airplane turns on whether Mid Continent has eliminated the warranties applicable to the plane's quality and performance with the "as is" disclaimer. Curry County, knowing that the rebuilt plane had been wrecked and repaired, bought the plane "as is," instead of with an express or implied warranty of its condition.

Mid Continent made no representation of quality of performance of the airplane which would give rise to an express warranty under the Code. With regard to the implied warranties of merchantability and fitness, Section 2.316(c)(1) of the Code provides for their exclusion with an "as is" disclaimer. Curry County does not argue that the "as is" disclaimer in this case in

invalid for any reason under the Uniform Commercial Code. With that disclaimer Mid Continent has effectively eliminated the implied warranties involved in the sale of the airplane. The result is that Curry County has taken the entire risk as to the quality of the airplane and the resulting loss.

Plaintiffs' cause of action against Mid Continent is severed from that against Bobby Shivers and Robert Hawkins, who did not appeal from the judgment against them. Judgment is here rendered that plaintiffs take nothing in their suit against Mid Continent.

Dissenting opinion by POPE, J., joined by JOHNSON, J.

POPE, Justice, dissenting.

The question presented is whether a suit for recovery of damages to an airplane that was physically damaged in a crash landing can qualify as a products liability case upon proof that the crash was caused by an unreasonably dangerous defect. I disagree with the majority holding that damages to the product itself, as a matter of law, always is a contract action. I agree with the argument of Curry County Spraying Service, Inc. that its action, based on appropriate fact findings, was a tort action. Curry Spraying purchased its airplane on an "as is" contract. All members of the court are in agreement that a sale of goods "as is" will exclude a seller's liability on implied warranties. The court is also in agreement that for policy reasons, an "as is" contract does not disclaim a tort action for unreasonably dangerous defects unless the agreement shows clearly that there is an intent to exclude strict liability also. *Sterner Aero AB v. Page Airmotive, Inc.*, 499 F.2d 709 (10th Cir. 1974); *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974); *Delta Air Lines, Inc. v. Douglas Aircraft Co.*, 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (1965); *McMillen Feeds, Inc. v. Harlow*, 405 S.W.2d 123, 137 (Tex.Civ. App.—Austin 1966, writ ref'd n. r. e.).

I would hold that Curry Spraying's action was a tort action under section 402A, Restatement (Second) of Torts. The trial court made findings that the plane had a defect that was unreasonably dangerous at the time Mid Continent Aircraft sold it to Curry Spraying. In spite of every finding that supports an action for strict liability, the majority opinion holds that Curry Spraying's action is a contract action for economic loss because the damages were to the product itself. *Nobility Homes, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977), decided this term of court, has indeed had a short life.

### *Nobility Rejected the Rule of the Majority Opinion*

We should not so soon forget that it was the product itself for which the plaintiff sought damages in *Nobility.* The roof of the mobile home leaked, the floor seams had separated, doors and windows were improperly installed, and cabinets had pulled away from the walls. We did not hold that damages to the product itself defeated an action for strict liability. We relied upon two precedents in support of our decision in *Nobility, Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), and *Melody Home Mfg. Co. v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ). In *Seely,* the product itself, a truck, was damaged when it overturned by reason of a bouncing or "galloping" characteristic it had. In *Melody Home,* the damages were to a trailer home, also the product itself.

It would have been much easier in those cases denying recovery on a theory of strict liability to have written that strict liability does not apply to the product itself. We did not see fit to do so in *Nobility,* nor did Justice Traynor place his decision on so tenuous a ground in *Seely.* In fact, in *Seely,* whose rule we adopted, Justice Traynor concluded his opinion by recognizing that strict liability in an appropriate case applies to the product itself. The court said:

Plaintiff contends, that, even though the law of warranty governs the economic relations between the parties, the doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property, as well as personal injury. We agree with this contention. 69 Cal.2d at 19, 45 Cal.Rptr. at 24, 403 P.2d at 152.

In *Melody Home,* the plaintiff sued for damages to a trailer home which had a defective roof, buckling floor, a bent frame and other defects. The plaintiff also sued for personal injuries by reason of drinking contaminated water that flowed through the pipes of the trailer. The claim for personal injury went out of the case because of the absence of proof that the defect existed at the time the trailer left the manufacturer's hands. There was left in the case only the right to recover damages to the trailer itself in a strict liability action. Neither the court in *Melody Home* nor this court in discussing that case in our *Nobility* opinion denied the plaintiff his action in strict liability because the damages were to the product itself. *See also Gherna v. Ford Motor Co.,* 246 Cal.App.2d 639, 55 Cal.Rptr. 94, 101 (1966).

### *The Majority Opinion Rejects the Criteria Adopted by Nobility Homes*

Consistent with all of our many cases concerning products liability, in deciding *Nobility,* we looked to section 402A, Restatement (Second) of Torts, to determine whether, under its provisions, the plaintiff purchaser had made proof of the facts that establish an action in strict liability. The section says:

(1) One who sells any product in a defective condition *unreasonably dangerous* to the user or consumer *or to his property* is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if . . .[1]

The first paragraph of *Nobility* stated what this court considered the controlling trial court finding:

---

1. All emphasis is added unless otherwise indicated.

There were no findings that these defects made the unit *unreasonably dangerous* or caused harm to Shivers or his property. We later repeated that same reason in the opinion. We also relied upon and quoted from *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), which, like *Nobility*, was a case of damages to the product itself. We repeat the quotation from *Seely*:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. *He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm.* 69 Cal.2d at 18, 45 Cal.Rptr. at 23, 403 P.2d at 151.

*Melody Home* had earlier used the same test. Speaking of the defective roof, floor, and frame the court wrote:

> It is not apparent that these defects render the house trailer unreasonably dangerous to the user, or that physical harm was thereby caused to the user.
>
> \* \* \* \* \* \*
>
> Here there was no physical harm to person or property caused by the defective condition of the trailer, other than the contaminated water.

I respectfully suggest that the statement in the footnote of the majority opinion that this court has not confronted this question and the majority's citation of *Melody Home* in support of its statement is not correct. The question was confronted in *Melody Home*, and the reasons that opinion stated in reaching its result were approved in our *Nobility* opinion. *See Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77, 79–80 & 80 n. 5 (Tex.1977).

The reason that *Nobility, Melody Home,* and *Seely* held there was no strict liability

case for the product itself was the absence of proof and findings that there was a defect that was unreasonably dangerous that produced the accident. There was, of course, a sale of a product in those cases and in truth section 402A contemplates a sale by its express terms. In the case before us, Curry Spraying proved and obtained these essential findings:

> 2. That the absence of a crankshaft gear bolt lock plate in the engine of the airplane in question rendered said airplane an *unreasonably dangerous* product, to the person of any operator of the same, and to the property of any purchaser (consumer) of the same, at the time of the purchase of said airplane by the plaintiff, Curry County Spraying Service, Inc.
>
> 5. That the defect rendering the airplane in question *unreasonably dangerous* did not arise from normal use of the airplane.

It was those findings about the defect and its unreasonable dangerousness that makes this case one for products liability; it was the absence of those findings that made *Nobility, Melody Home,* and *Seely* actions in contract.

### The Historic Separation of Strict Liability From Contract Actions

In *Nobility* we also rejected the idea that our present Texas rule of strict liability is grounded upon *Jacob E. Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942). The court of civil appeals in *Nobility* had placed its decision upon the contract principle of "an implied warranty of reasonable fitness of a product as a matter of public policy." 539 S.W.2d at 194. We expressly held that the protection of Texas consumers no longer requires that questionable legal basis, particularly since Texas has now adopted section 402A of the Restatement (Second) of Torts and the Uniform Commercial Code.

The true beginning of the rule which separates the tort action of strict liability from contract actions is *MacPherson v.*

Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916). The dividing line that was there located has been adopted in Texas, and we should not substitute a confusing and different one. The case concerned a dangerously defective automobile that the plaintiff had purchased. He sued the remote manufacturer in tort, and the court permitted the suit. MacPherson was injured when the defective wooden spokes of a wheel on his Buick collapsed. In making the determination whether the action should be governed by tort or contract law, Justice Cardozo established a division line and provided a test. Justice Cardozo justified the tort action as a departure from ordinary contract law by a reliance upon precedents about defective products which presented "great danger," possessed a "potency of danger," or were "dangerous." Justice Cardozo also relied upon Lord Esher's statement in *Heaven v. Pender*, 11 Q.B.D. 503 (1883) which, as Justice Cardozo expressed it, "irrespective of contract, imposed upon the manufacturer" a tort duty. The opinion quoted Lord Esher in making that distinction between contract and tort:

> Whenever one person supplies goods or machinery, or the like, for the purpose of their being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied, or the mode of supplying it, *there will be danger of injury to the person or property* of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying such thing.

Section 402A captured and refined that early distinction between the tort action that we today call strict liability and a contract action. Texas, in a number of precedents, has fully adopted the principles of that section, and in my judgment, the substitution of different criteria will harm both tort and contract actions. The rule of 402A and *Nobility* can more easily be applied since it is capable of clearer statement and more definitive findings.

### The "Other" Property Test is Unsound

The majority concludes that there may be no action in strict liability for an accident resulting from an unreasonably dangerous defect if the accident happens to the product itself. It says that the accident must produce the physical harm to "other" property. But the majority has not discussed the criteria stated in section 402A which historically and by precedent have made an action one in tort. The majority opinion adds a word to the existing rule and to section 402A by requiring that the physical harm be to "other" property. Section 402A does not contain that limitation. It says that strict liability applies when there is "physical harm thereby caused to the ultimate user or consumer, *or to his property* . . . ." The strongest support marshalled by the majority opinion is the conclusory statement by Dean Page Keeton:

> A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as *part of the accident problem*; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory. Keeton, *Annual Survey of Texas Law, Torts*, 32 Sw. L.J. 1, 5 (1978).

Dean Keeton's opinion is worthy of respect, but it would merit even more if he had stated some reason for it. He concludes that "a damaging event to the product itself is irrelevant to policy considerations that determine liability in tort." Why? In the case before us it is the same defect, the same unreasonableness, the same dangerousness, and the same accident that would have supported an action for damages for

personal injuries and to "other" property. The elimination of those criteria as to the product itself is at best an arbitrary distinction, and I find no policy reason to justify it.

Let us assume that Curry Spraying has purchased an executive Lear Jet at a cost of one million dollars from Mid Continent. Its pilot takes off in the jet from an airstrip where several other Curry Spraying planes are anchored near the runway. A mechanic is working on one of Curry Spraying's other planes on the ground. Shortly after takeoff the pilot is forced to return to the airstrip where, in an attempt to land, he crashes the plane onto and destroys the plane on which the mechanic is working. Both the pilot and the mechanic sustain crippling injuries. The Lear Jet is totally destroyed. Let us assume further, that the fact finder makes the same findings that we have in the case before us. What actions in tort do we have from that accident?

The pilot has an action in strict liability for his injuries because he proved a defect that was unreasonably dangerous, and it caused him physical harm. *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex. 1967). The mechanic who was working on the ground also has a strict liability action for his injuries even though he is a third-person bystander. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex.1969). Curry Spraying has a strict liability action for the damage to the plane that was anchored on the ground because the company suffered physical harm to its property. *Franklin Serum Co. v. Hoover & Son,* 418 S.W.2d 482 (Tex.1967). The majority agrees with this since it would be Curry Spraying's "other" property. Under settled Texas law each of those three actions may be asserted under 402A. They are tort actions. Restatement (Second) of Torts, § 402A, Comment m (1965).

According to the majority, the supposed accident created three tort actions and one contract action. The damages for the Lear Jet that was totaled in the crash must be sought in a contract action, states the majority, because it was damage to the product itself. I confess that the law is not always consistent, but we are creating an anomalous inconsistency when neither precedent, simplicity of a rule, nor sound reasons justify it. I agree with Dean Keeton's statement: "A hazardous product that has harmed something or someone can be labeled a part of the *accident* problem . . . ." I also agree with Comment c under section 402A that "public policy demands that the burden of *accidental* injuries caused by products intended for consumption be placed upon those who market them . . . ." Restatement (Second) of Torts, § 402A, Comment c, at 350 (1965). The same policy reasons for deterring conduct and imposing a burden of care upon the seller exist in the case of a dangerous defect that causes an accident and damages to persons, other property, or the product itself. In fact the manufacturer is already under the identical burden of care. I would not require a plaintiff who was injured in an automobile accident because of its unreasonably dangerous defect to establish a tort action to recover his personal injuries but a contract action to recover for the damages to his vehicle. Negligence tort law has long been to the contrary.

I agree that "economic loss" is not the same thing as "physical harm" that is required by section 402A. A defect that is not unreasonably dangerous, does not result in an accident, or one that must only be repaired or replaced, is not a tort action. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). That is not the case before us and those are not the trial court's findings in the instance of Curry Spraying's airplane crash that resulted in physical harm.

Property damage is usually readily distinguishable from economic loss. For example, operation of a defective radiator causes property damage when it results in a fire which destroys the plaintiff's store and economic harm when it results in conditions so uncomfortable that it causes the loss of customer patronage . . . . . If the damage is to the defective product itself, similar distinctions

must be drawn. When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other *non-accidental causes*, it is treated as economic loss. Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966).[2]

The majority opinion is grounded upon two Georgia cases, one from Idaho, one from Nebraska, and a federal district court. The only one which supports the majority opinion is the federal district court case which was passing on a South Carolina statutory adoption of section 402A. It expressed no reason for its holding that strict liability did not apply to the product itself. *Cooley v. Salopian Industries, Ltd.*, 383 F.Supp. 1114 (D.S.C.1974). The case of *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1st Div. 1975), was a suit for diminution of market value by reason of an engine disorder. There was no accident involved, and there were no findings of an unreasonably dangerous defect. The case of *Long Manufacturing, Inc. v. Grady Tractor Co.*, 140 Ga.App. 320, 231 S.E.2d 105 (3d Div. 1976), was a suit by a corporate plaintiff under the Georgia statute that permits strict liability actions only by individuals. Both of those Georgia cases need to be studied in terms of a more recent Georgia case. *Mike Bajalia, Inc. v. Amos Construction Co.*, 142 Ga.App. 225, 235 S.E.2d 664 (1st Div. 1977), permitted recovery for an individual, not the other corporate plaintiff, for the collapse of a building, and rejected as obiter dicta the statement

in *Grady Tractor* that there may be no recovery for damages to the product itself. It then permitted recovery for physical harm produced by dangerously defective building components.

[Ga.] Code Ann. § 105–106, supra, imposes a statutory duty on manufacturers of personal property, the breach of which gives rise to an action on a theory of strict liability. The strict liability action, being predicated upon the breach of a legal duty, is an action ex delicto. *See Ford Motor Company v. Carter*, 141 Ga. App. 371, 233 S.E.2d 444. Therefore, the reasoning of *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 294(2), 217 S.E.2d 602, supra, is not applicable to the strict liability issue. Also distinguishable is *Chrysler Corporation v. Taylor*, 141 Ga. App. 671(2), 234 S.E.2d 123, where this court held that an "injury" within the context of Code Ann. § 105–106, supra, does not include damages stemming from loss of the benefit of one's bargain.

Of interest here is the recent case of *Long Manufacturing, etc., Inc. v. Grady Tractor Co.*, 140 Ga.App. 320, 322(4), 323, 231 S.E.2d 105, in which the opinion discusses the issue of whether or not the plaintiff might recover under a strict liability theory for the damage to a portable tobacco barn, damaged when being transported along a highway after crossing a railroad track.

In Division 4 thereof we find the language, "We do not believe recovery in strict liability in tort can be had solely for property damage to the allegedly defective property itself." But in that case the plaintiff, a corporation and not a nat-

---

**2.** A similar result has been suggested under New York law:

> [A] truck's defective brakes may give rise to either economic loss or property damage, depending upon the facts. If the defect is discovered and the truck is thereby rendered temporarily unusable, its owner may suffer economic damage consisting of the costs of repairing the brakes, as well as consequential "economic loss" of profits resulting from his inability to use the truck in his business. On the other hand, if the defect is not discovered and an accident with another vehicle occurs,

> the damage to both the truck and the other vehicle resulting from the impact constitutes property damage. It may be noted that damage to the defective product itself may only amount to property damage and not economic loss. It is only when damage results from non-accidental causes, such as deterioration or breakdown, that economic loss in the pure sense, rather than property damage, has occurred. Zammit, *Manufacturers' Responsibility for Economic Loss Damages in Products Liability Cases: What Result in New York?* 20 N.Y.L.F. 81, 82 (1974).

ural person, was suing for negligence in the design and was not seeking judgment under the Georgia strict liability statute; nor could it do so. See Code Ann. § 105–106, supra. The language in Division 4 is therefore obiter dicta, and does not control this case in any manner.

The court erred in granting the motion for summary judgment of defendant Butler on the strict liability issue as to plaintiff Mike Bajalia, individually. In the case sub judice, the plaintiff's strict liability action is not predicated solely upon his economic loss, *but is also based upon the physical injuries to the building.* 142 Ga. App. at 227–28, 235 S.E.2d at 666.

The case of *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975), was on facts similar to this present case, but it included no claim for recovery in tort or strict liability. It was pleaded only as an action for breach of implied warranty, and it reached a result on that kind of contract action contrary to our *Nobility* holding that privity of contract need not be proved. Finally, the Nebraska case of *Hawkins Construction Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643 (1973), must be understood in terms of Nebraska's unique version of strict liability. Nebraska does not follow section 402A; it recognizes strict liability, as explained in *Hawkins*, only for an "injury to a *human being* rightfully using that product." 190 Neb. at 559, 209 N.W.2d at 652. [Emphasis in original.] Under Nebraska law, any damage to property, whether to the product itself or to "other" property, would be economic loss and non-recoverable under strict liability. This Nebraska rule is also contrary to *Nobility Homes, supra,* and settled Texas law. *Franklin Serum Co. v. Hoover & Son*, 418 S.W.2d 482 (Tex.1967).

If we are to be guided by decisions of other jurisdictions, we should consider *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248 (Alaska 1977). The Clouds sued in strict liability for damages to their mobile home after their home was destroyed by fire. They proved that a rug pad was highly flammable and was ignited by reason of its proximity to an electric heating unit.

Relying upon *Seely* and section 402A, the court held, ". . . first, that the damage to the product . . . was the result of a sudden calamitous occurrence, the fire." In holding that recovery could be had for damages to the product itself when there was such an accident, the court made this significant distinction between an earlier decision of its own. The court wrote:

> We have granted review in order to clarify our opinion in *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976).
>
> \*   \*   \*   \*   \*   \*
>
> We note that the harm alleged in this case is much different from that alleged by the Morrows in *New Moon.* The Morrows' trailer was allegedly defectively manufactured, but the defects resulted in a deprivation of the value of the Morrows' bargain. Unlike the circumstances in the case at bar, the Morrows were plagued by a "lemon," not an *unsafe product.* The Morrows' trailer was not suited for the purpose for which it was purchased, *but the defects in it were not such that they resulted in sudden, violent or calamitous harm.* Having been deprived of the intended use of their product, the harm in that case was properly classified as economic loss. 563 P.2d at 251.

It will simplify this complex area of the law if we hold to the line already defined in section 402A and adopted in *Nobility.* I would hold that an action is one in tort, not contract, when it is established that there was an accident, caused by a defective product that is unreasonably dangerous to the user or to his property. The trial court's findings in this case establish all of those facts. That rule is consistent with section 402A, *Nobility,* and former Texas products liability decisions which have taken strict products liability out of the contract arena in the case of consumers, users, nonusers, nonconsumers, and bystanders whether the damage is to the person or to the consumer's or user's property. *Crocker v. Winthrop Laboratories, Inc.*, 514 S.W.2d 429 (Tex.1974); *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969).

The next time a court is faced with the same facts that we had in *Nobility*, which rule will the court follow? Will it look to accident, defect, and dangerousness as in *Nobility*? Or, will it look to the "other" property rule of this case?

For these reasons I respectfully dissent.

JOHNSON, J., joins in this dissent.