Archie T. **ERWIN** and Maxine Erwin, Appellants,

v.

David C. **SMILEY,** Appellee.

No. 11–96–280–CV.

Court of Appeals of Texas, Eastland.

April 30, 1998.

Rehearing Overruled May 28, 1998.

Ordered Published May 28, 1998.

Tom D. Rorie, Stripling, Rorie, Pederson & Floyd, Nacogdoches, for appellant.

E. McAlister Benchoff, Benchoff & Benchoff, Nacogdoches, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

Archie T. Erwin and his wife, Maxine, sold their house to David C. Smiley. Later, Smiley sued the Erwins for breach of warranty and for violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. §§ 17.41 et seq. (Vernon 1987 and Supp.1998). Smiley alleged that the Erwins made various misrepresentations regarding the house and that they also failed to disclose certain information, including information regarding termites. Smiley sought actual and exemplary damages, a set-off of the amount of his damages against any money he owed the Erwins under a promissory note, and a declaratory judgment that he owed no money to the Erwins under the promissory note. Smiley also sought a release of the vendor's lien, rescission of the agreement to buy the house, and attorney's fees.

The Erwins filed a general denial and a counterclaim in which they alleged that Smiley filed the lawsuit in bad faith to avoid payment of his obligations to them. The Erwins also claimed that a restraining order granted to Smiley when he filed the original suit deprived them of the present value of the promissory note and also prevented the exercise of their rights under a deed of trust securing the note.

The jury found that Archie Erwin committed false, misleading, or deceptive acts or practices and awarded Smiley $15,000 to

treat or repair damage resulting from termite infestation.[1] The jury also awarded Smiley $30,000 in attorney's fees. Judgment was entered in accordance with the verdict. We reverse and render.

## Points of Error

The Erwins assert in their first point of error that the trial court erred in entering judgment for Smiley because the house was sold on an "as is" basis and that any acts of the Erwins could not have been the producing cause of Smiley's damages. The Erwins contend in their second point that the trial court erred by refusing to submit a jury instruction or definition of "as is." In their third and final point, the Erwins argue that the award of attorney's fees was excessive.

Smiley brought six cross-points on appeal. In his first cross-point, Smiley argues that the trial court erred in failing to award him attorney's fees for an appeal. In his second cross-point, Smiley maintains that the trial court erred when it failed to award attorney's fees for an appeal. In his third cross-point, Smiley maintains that the trial court erred when it amended the final judgment to declare that the promissory note, vendor's lien, and deed of trust were not affected by the judgment. In his fourth cross-point, Smiley argues that the trial court erred when it failed to disregard the jury's answers that Maxine Erwin did not knowingly commit false, misleading, or deceptive acts which were a producing cause of Smiley's damages. In his fifth cross-point, Smiley maintains that the trial court erred when it overruled his motion for new trial because the jury's findings that Maxine Erwin did not knowingly commit false, misleading, or deceptive acts or practices were against the great weight and preponderance of the evidence. Finally, in his sixth cross-point, Smiley contends that the trial court erred when it overruled Smiley's motion for new trial based on the jury's failure to award actual damages for certain defects in the house in addition to damage from termites.

1. The jury found that Maxine Erwin did not commit any false, misleading, or deceptive acts or practices.

## Background Facts

Archie and Maxine Erwin sold their home in Nacogdoches to David Smiley. Before he agreed to buy the house, Smiley inspected it on various occasions. On one of those occasions, Smiley asked Archie Erwin if there were any termite problems. The evidence shows that Archie Erwin told Smiley that there had been a termite problem which had been remedied.

After some negotiation, the parties entered into an earnest money contract for the sale of the home. Pursuant to the agreement, Smiley was to pay $80,000 in cash, and the balance of $35,000 was to be paid by a promissory note payable to the Erwins. The preprinted earnest money contract form which the parties signed contained the following section:

7. PROPERTY CONDITION: (Check A or B)

[XX] A. Buyer accepts the Property in its present condition, subject only to any lender required repairs and as is.[2]

[ ] B. Buyer requires inspections and repairs required by any lender and the Property Condition Addendum attached hereto.

The contract also included a provision that it contained the entire agreement of the parties and that all representations contained in the contract survived the closing.

Approximately six months after he had bought the house, Smiley noticed that some of the paint was wearing faster than he had expected. Upon closer inspection, he discovered termite trails coming up from the bottom of the slab. Smiley contacted Charles Tarver, a pest control operator. Tarver inspected the house and found live termite infestations and termite damage. He testified that he could find no evidence that the house had previously been treated for termite infestation. It was Tarver's opinion that the termite damage was heavy and that the house had been infested for five to ten years.

2. The words "as is" were typewritten into the preprinted earnest money contract form.

*DTPA and Producing Cause*

The Erwins argue in their first point of error that the trial court erred in entering judgment for Smiley because the sale of the house was on an "as is" basis and because, even if they had made some oral misrepresentation or failed to disclose something, that could not have been the producing cause of Smiley's damages. Under the facts of this case we agree.

■■■ The elements of a DTPA action for failure to disclose material information and misrepresentations are:

(1) The plaintiff is a consumer;
(2) The defendant engaged in false, misleading, or deceptive acts; and
(3) These acts constituted a producing cause of the consumer's damages.

*Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995); see also TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Supp.1998). Proof of the producing cause of the plaintiff's injury is essential for a recovery under the DTPA. Section 17.50(a)(1). Producing cause is actual causation in fact. *Prudential Insurance Company of America v. Jefferson Associates, Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). To show actual causation in fact requires proof that an act or omission was a substantial factor in bringing about the injury which would not have otherwise occurred. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Smiley is entitled to recover only if there is some evidence to support each element of the cause of action.

The Erwins rely primarily on *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra.* The Texas Supreme Court held in *Prudential* that a buyer who agrees, freely and without fraudulent inducement, to purchase commercial real estate "as is" cannot recover damages from the seller when the property is later discovered not to be in as good a condition as the buyer believed it was when he inspected it before the sale. *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra* at 158. Even though *Prudential* involved the sale of commercial property, we believe that the same analysis is applicable to an "as is" provision in a contract for the sale of residential property.

In *Prudential,* F.B. Goldman, a sophisticated real estate investor who owned an interest in at least 30 commercial buildings, bought an office building from Prudential Insurance Company of America. Goldman later learned that the building contained asbestos fireproofing. Goldman sued Prudential for DTPA violations, fraud, negligence, and breach of the duty of good faith and fair dealing, alleging that it misrepresented the condition of the building to him and failed to disclose that it contained asbestos which impaired its value. Prudential argued that Goldman was not entitled to damages because he bought the building "as is." The Supreme Court agreed, concluding that Goldman's agreement to buy the building "as is" precluded him from proving that Prudential's conduct caused him any harm. When he agrees to purchase something "as is," a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra,* citing *Mid Continent Aircraft Corporation v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308, 313 (Tex.1978). Goldman's "as is" agreement negated the causation essential to recovery on all of his claims. *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra* at 161.

■■ While there are circumstances that will render an "as is" agreement unenforceable, those allegations are not made in this case. See, e.g., *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra* at 162; see also *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985); *Smith v. Levine,* 911 S.W.2d 427 (Tex.App.—San Antonio 1995, writ den'd). The validity of the "as is" agreement is determined in light of the sophistication of the parties, the terms of the "as is" agreement, whether the "as is" clause was freely negotiated, whether it was an arm's length transaction, and whether there was a knowing misrepresentation or concealment of a known fact. *Prudential Insurance Company of America v. Jefferson Associates, Ltd., supra* at 160–162;

*Smith v. Levine, supra* at 432. Although the jury in the case now before us found that Archie Erwin committed false, misleading, or deceptive acts or practices, they did not find that such conduct was "knowing." The jury also found that neither of the Erwins made any fraudulent representations to induce Smiley to enter into the transaction.

 The evidence shows that the Erwins and Smiley were similarly situated parties and that the sale was an arm's length transaction. This transaction involved the sale of a residence. The Erwins had the house designed and built, but there was no evidence that they were sophisticated real estate investors or that they were involved in speculative construction. They lived in the house for approximately 14 years before deciding to sell it. Likewise, Smiley bought the house for his personal residence. There was evidence that he had previously owned houses, but none of the evidence indicated that he possessed any unique expertise in real estate investments. Further, both parties were represented by counsel, and there was no evidence of a special relationship between the parties which would keep it from being an arm's length transaction. The evidence also shows that the "as is" provision was freely negotiated, not merely "boilerplate" language in the preprinted earnest money contract form; it was specifically added. There was evidence that, during the negotiations, Archie made Smiley aware that the sale was on an "as is" basis. Smiley consulted his attorney before signing the earnest money contract. Furthermore, Smiley testified that he did not rely on any statement that Archie Erwin made regarding the meaning of the "as is" term.

This transaction involved similarly sophisticated parties who were represented by counsel and who freely negotiated an "as is" sale of the residence. The jury determined that there was no fraudulent concealment. Furthermore, Smiley testified that the Erwins did not prevent him from any inspections, including termite inspections. We find that the "as is" clause in the earnest money contract negated Smiley's assertion that the Erwins were the producing cause of his damages. The Erwins' first point of error is sustained. Their other two points become moot. All of Smiley's cross-points become moot because of our holding on the Erwins' first point of error.

### This Court's Action

The judgment of the trial court is reversed, and this court renders judgment that Smiley take nothing from the Erwins.