**DELTA AIR LINES, INC., Plaintiff-Appellant-Cross-Appellee,**

v.

**McDONNELL DOUGLAS CORPORA-TION, Defendant-Appellee-Cross-Appellant.**

**No. 73–1799.**

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1974.

Rehearing Denied Dec. 17, 1974.

Frank F. Rox, Robert S. Harkey, Legal Div., Delta Air Lines, Inc., Hartsfield Atlanta, Atlanta, Ga., for plaintiff-appellant-cross-appellee.

J. Arthur Mozley, Atlanta, Ga., for defendant-appellee-cross-appellant.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

An aircraft purchased by Delta Air Lines, Inc. from McDonnell Douglas Corporation, the manufacturer, suffered damages when its nose gear collapsed during a landing in Jacksonville, Florida, because a component part was incorrectly installed. There were no personal injuries. Delta seeks to recover from McDonnell the expenses incurred in repair on four theories of liability: (1) negligence; (2) breach of implied warranties of merchantability and fitness for a particular purpose; (3) breach of express warranty; and, (4) strict liability in tort. The District Court dismissed the two counts sounding in negligence and strict liability on the ground that an exculpatory clause in the contract limited McDonnell's liability to contractual warranty provisions. Delta, in this interlocutory appeal, seeks review of the correctness of the Court's ruling in this regard. We affirm.

By cross-appeal McDonnell seeks review of the District Court's refusal to dismiss the counts based on express and implied warranties. The District Court reserved decision as to these two counts pending trial. Accordingly, there is no decision on the attempted cross-appeal for us to review at this time. Assuming without deciding that the allowance of an interlocutory appeal was not improvident under these circumstances, we will review the validity and effect of the exculpatory clause only insofar as it presents a defense against the counts for negligence and strict liability, the issues previously decided by the trial court.

The Purchase Agreement in question was signed at Long Beach, California, on November 18, 1964, and originally related only to the so-called "short" DC–8 aircraft, or Series 51 DC–8 aircraft. On August 13, 1966, at Long Beach, California, the parties executed Amendment No. 5 to the Purchase Agreement, which amendment provided that additional DC–8 aircraft, of the Series 61 or "stretched" variety, would be delivered to Delta under the terms and provisions of the November 18, 1964, Purchase Agreement. The accident aircraft was one of the aircraft covered by Amendment No. 5.

Article 4 of the Purchase Agreement stated the aircraft would be manufactured and delivered in California, and Article 17 provided: "This agreement shall be construed and performance thereof shall be determined according to the laws of the State of California, U.S.A." The Purchase Agreement also contained clauses which limited the agreements between the parties to the exact written terms of the contract.

At the time of the accident in question, Delta was operating the aircraft

Douglas Finance Corporation, but the lease was contemplated by the parties and they had agreed that the lease agreement would not abrogate or modify under a lease agreement with McDonnell the provisions of the Purchase Agreement.

1. 12. WARRANTY.

(A) Subject to the limitations and conditions hereinafter set forth, seller warrants that the aircraft, accessories, equipment and parts supplied hereunder which have been manufactured by seller, and by other manufacturers if made to detailed design and detailed specifications originated by seller, shall at the time of delivery by seller be free from:

(1) Defects in material and workmanship furnished by seller and used in the fabrication thereof;

(2) Defects arising from the selection of material or process of manufacture;

(3) Defects inherent in the design thereof in view of the state of the art as of the date of such design;

(4) Defects arising from failure to conform to the detailed specifications of this purchase agreement except as to such portions thereof, if any, as are expressly stated to be not guaranteed.

(B) Defects in material and workmanship, defects arising from the selection of material or process of manufacture and defects arising from failure to conform to the detailed specifications, must become apparent in the aircraft, accessory, equipment or part within one (1) year or two thousand (2,000) flying hours, whichever shall first expire, but not less than eight (8) months after delivery of said aircraft.

The extent of seller's liability under this warranty as to defects in material or workmanship, defects arising from the selection of material or the process of manufacture, and defects arising from failure to conform to the detailed specifications, is limited to the repair at its expense of such defects in the aircraft or to the repair or replacement at its expense (with a similar item free from the defect in question) of any accessory, equipment or part which is defective in any of such respects.

(C) The extent of seller's liability under this warranty as to defects inherent in design is limited to the correction at its expense of all such defects becoming apparent in the aircraft; accessory, equipment or part purchased hereunder within one (1) year or two thousand (2,000) flying hours, whichever shall first expire, but not less than eight (8) months after delivery of said aircraft.

The Warranty Article in the Purchase Agreement, set forth in full in the margin,[1] contained the following exculpatory clause:

(G) The warranty provided in this article and the obligations and liabilities of seller thereunder are in lieu of

(D) Seller shall make the foregoing repairs, replacements and corrections with reasonable care and dispatch in order that the aircraft, system, accessory, equipment or part involved may not be kept out of service longer than necessary. Disassembly of the aircraft to correct the defect, removal of the defective or faulty structure, system, accessory, equipment, or new part and installation of the corrected or new structure, system, accessory, equipment or new part and re-assembly of the aircraft shall be at buyer's expense, unless such work is performed by seller at its factory at Long Beach, California, or unless buyer offers to return the aircraft, accessory, equipment or part and buyer and seller thereafter mutually agree that buyer will perform the work and that seller will pay buyer in whole or in part for removal, installation and re-assembly of the aircraft. Cost of temporary or interim repairs, replacements and corrections accomplished by buyer, as well as any consequential cost related thereto, shall likewise be at buyer's expense, except when seller, in advance, approves in writing such temporary or interim repairs, replacements and corrections and the cost thereof, which cost seller may agree to pay in whole or in part.

(E) Seller shall, as to each defect, be relieved of all obligations and liability under this warranty if:

(1) The aircraft is operated with any accessory, equipment or part not specifically approved by seller and not manufactured by seller or to seller's design and specification unless buyer furnishes reasonable evidence that such installation was not a cause of the defect; provided that this provision shall not apply to any accessory, equipment or part, the use of which does not affect the safety of the aircraft;

(2) The aircraft shall not have been operated or maintained in accordance with seller's instructions furnished under this agreement, unless buyer furnishes reasonable evidence that such operation or maintenance, as the case may be, was not a cause of the defect;

(3) The aircraft shall not have been operated under normal airline use, unless buyer furnishes reasonable evidence that such operation was not a cause of the defect;

and buyer hereby waives all other warranties, guarantees or liabilities, express or implied arising by law or otherwise (including without limitation any obligation of seller with respect to consequential damages) and whether or not occasioned by seller's negligence and shall not be extended, altered or varied except by a written instrument signed by seller and buyer; provided that in the event the provision relieving seller from liability for its negligence should for any reason be ineffective, the remainder of this paragraph (G) shall remain in full force and effect.

Amendment 5 incorporated the terms of the 1964 agreement, including the Warranty Clause, which terms were the subject of intensive negotiation. There was no substantial imbalance in the bargaining positions of the parties and the

---

(4) The aircraft shall have been repaired, altered or modified without seller's approval or if the aircraft shall have been operated subsequent to its involvement in an accident, unless buyer furnishes reasonable evidence that such repair, alteration, modification, operation or accident was not a cause of the defect, provided, however, that this limitation insofar as it relates to repairs and accident shall not be applicable to routine repairs or replacements or minor accidents which normally occur in the operation of aircraft if such repairs or replacements are made with suitable material and according to standard practice and engineering;

(5) Buyer does not (i) report the defect in writing or by telegram to seller's warranty administrator at its factory in Long Beach, California, within sixty (60) days following such defect becoming apparent to buyer as provided in paragraphs (B) and (C) above, and (ii) return the defective or faulty aircraft, accessory, equipment or part to said factory (or, if return to seller's factory is not feasible and seller so agrees in advance in writing, which agreement shall not unreasonably be withheld, to buyer's base repair shop or other appropriate facility in the United States) within sixty (60) days following the end of the applicable period of time specified in paragraphs (B) and (C) above, or within sixty (60) days following such defect becoming apparent, whichever is earlier, and further provided that if, for reasons beyond buyer's control, return of the items to seller's factory is not possible within said sixty (60) day period, and if buyer so notifies seller in writing and seller so agrees in writing, which agreement shall not unreasonably be withheld, the said sixty (60) day period will be waived, but buyer must return the item to seller's said factory if, as and when said return does become feasible. Buyer also must submit reasonable proof to seller, within sixty (60) days after the defect becomes apparent (except when such period is waived) that the defect is due to a matter embraced within the seller's warranty hereunder. Seller shall approve or disapprove buyer's substantiated warranty claim in writing within sixty (60) days of receipt thereof. All such transportation, including return to buyer of the repaired, replaced or corrected aircraft, accessory, equipment or part shall be at buyer's expense.

With respect to matters made the subject of seller's approval under sub-paragraphs (1), (4) and seller's approval or disapproval of buyer's warranty claim under (5) of this paragraph (E), seller's approval or disapproval thereof shall be made in writing to buyer within sixty (60) days after buyer's written notice requesting approval is received by seller. In the event of disapproval, seller shall set forth the reasons therefor in its statement of disapproval. Seller's failure to deliver to buyer a written statement of approval or disapproval within such sixty (60) day period shall irrevocably and conclusively constitute approval by seller of the subject matter of the particular request involved.

(F) Normal wear and tear and the need for regular overhauls shall not constitute a defect or failure under this warranty. Buyer acknowledges that some of the accessories, equipment and parts warranted hereunder have a normal life expectancy that is less than the time period specified under paragraph (B) and (C) above.

(G) The warranty provided in this article and the obligations and liabilities of seller thereunder are in lieu of and buyer hereby waives all other warranties, guarantees or liabilities, express or implied arising by law or otherwise (including without limitation any obligation of seller with respect to consequential damages) and whether or not occasioned by seller's negligence and shall not be extended, altered or varied except by a written instrument signed by seller and buyer; provided that in the event the provision relieving seller from liability for its negligence should for any reason be ineffective, the remainder of this paragraph (G) shall remain in full force and effect.

Warranty Clause was not dictated by McDonnell on a "take it—or leave it" basis. Due to the California Court of Appeal decision in Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc., 238 Cal. App.2d 95, 47 Cal.Rptr. 518 (1965), rendered several months before the parties entered into the agreement in the instant case, Delta was aware that McDonnell would, under certain circumstances, agree to modification or elimination of the exculpatory clause, albeit for a price which Delta apparently did not wish to pay. See 238 Cal.App.2d at 103 n. 5, 47 Cal.Rptr. at 523 n. 5.

. The parties agree with the proposition that in this diversity case, we must follow state law,[2] including state conflict of law rules,[3] and that the Georgia conflicts rule provides that the law of the state where a contract is made and performed will govern the validity and interpretation of the contract except when the result is contrary to the public policy of the State of Georgia.[4] The Georgia state courts would apply California law in this case not only because the contract was made and performed in California, but also because the parties specifically agreed in the contract that California law would control.[5]

The chief point of disagreement between the parties that we are called upon to settle concerns what a California court would do with this case. This disagreement centers around the precedent established by Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc., 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (1965), in the light of an earlier California Supreme Court case, Tunkl v. Regents of University of California, 60

Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963), and a California statute dealing with exculpatory clauses, Cal.Civ.Code § 1668 (West 1972).

Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc., supra, involved the validity, as between the same airline and the same manufacturer as the case at bar, of virtually identical warranty provisions in connection with an airplane accident also caused by a malfunctioning nose landing gear. The intermediate California Court of Appeal upheld the exculpatory clause in the contract as precluding a negligence suit brought by the airline against the manufacturer.

Faced with this strong indication of how a California court would decide this case, Delta makes essentially five arguments against that result, which we find unpersuasive. We address the arguments seriatim as presented in Delta's brief.

 First, Delta contends that the exculpatory clause is in clear violation of the public policy of California as specifically set out in the statutes of that state because it would relieve McDonnell of responsibility for the violation of § 21.-165 of the Federal Aviation Administration (FAA) regulations requiring it to determine that the aircraft was in a condition for safe operation. California Civil Code § 1668 makes it against the policy of the law for a contract to exempt anyone from responsibility for violation of the law.[6] Delta asserts that by delivering the plane with the nose gear part incorrectly installed, McDonnell violated the FAA regulation found at 14 C.F.R. § 21.165 (1974), which provides in effect that an airplane manufacturer must determine that any airplane pro-

2. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

3. Klaxon Co. V. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

4. Cox v. Adams, 2 Ga. 158, 165 (1847); Goodman v. Nadler, 113 Ga.App. 493, 148 S.E.2d 480, 483 (1966).

5. See Barzda v. Quality Courts Motel, Inc., 386 F.2d 417 (5th Cir. 1967).

6. Cal.Civ.Code § 1668 provides:
 All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

posed for certification is in a condition for safe operation.[7]

Delta, however, confuses a negligence theory of action, under which violation of a law or a regulation may be evidence of negligence, *see* Steel v. Downs, 438 F.2d 310, 316 (8th Cir. 1971), with the liability that may be imposed by law. McDonnell is still answerable to the FAA and third parties for any responsibility established by the regulation, and any statutory right of action that might be given to Delta by FAA regulations has not been abrogated. But none of these causes of action are involved in an action based on common law negligence. We are unable to agree that the contract between two industrial giants fixing the dollar responsibility for McDonnell's alleged negligence would be void under California law, any more than would be an insurance contract which might be written for the same purpose.

Second, and along the same lines as the first argument, Delta contends that this case is distinguishable from Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc., because in that case the court did not consider the issue raised here with respect to the violation of § 21.165. The *Douglas* court, however, did reject an argument similar to the one asserted first by Delta, by finding that Douglas had not violated the regulations there in question. Delta argues that the clear inference from the case is that had such a violation been proved, the California Court would have held the exculpatory clause void under Section 1668. Since this case is at the pleading stage, Delta contends that it ought to be permitted to prove what it did not prove in the state case.

Although Delta is correct in contending that *Douglas* did not consider the issue raised here as to a FAA regulation

violation, it is incorrect in asserting that the California Court conceded that if a violation of such a regulation had been shown the exculpatory clause would have been invalid under California law. The total comments in the opinion relating to this argument about Section 1668 leave no inference whatsoever as to how the court would have handled the argument had Douglas violated the regulations. *See* 47 Cal.Rptr. at 525. With the *Douglas* case providing no guidance, we feel our analysis of Delta's first point applies equally to this point, and Delta's argument fails.

Third, Delta argues that even if Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc. were not distinguishable, the court in that case did not correctly apply the law of California as set out in the leading cases of that state. Instead, Delta asserts, that court misinterpreted and incorrectly applies the law, while the duty of the court below in this case was to apply the law of California correctly, and not just to follow the *Douglas* case. And since that case was not a correct interpretation of the law, the District Court was bound to follow the law set out in the statutes and other decisions of California.

In this argument, Delta stresses the case of Tunkl v. Regents of University of California, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963). In *Tunkl*, the Supreme Court of California held that release from liability for future negligence imposed as a condition for admission to a charitable research hospital was invalid on the ground that the agreement affected the public interest. The court reviewed a variety of exculpatory clause cases and concluded that an exculpatory provision can only be valid if it does not affect the "public interest." The *Douglas* court dealt specifi-

---

7. Section 21.165 reads:
 The holder of a production certificate shall—
 (a) Maintain the quality control system in conformity with the data and procedures approved for the production certificate; and

(b) Determine that each completed product submitted for airworthiness certification or approval conforms to the type design and is in a condition for safe operation.

cally with *Tunkl* and its analysis of California law, and concluded in a very thorough discussion, that the contract between the airline and the manufacturer was not clothed with the kind of public interest that surfaced in a contract between a patient and a hospital. Based on the reasoning in the *Douglas* opinion, we are convinced that California law was correctly applied there. What may be more important in addressing the plaintiff's contention is that under Erie R. R. v. Tompkins, *supra,* we are bound to follow state law, whether or not we agree with the reasoning upon which it is based or the outcome which it dictates. This is the ultimate significance of the *Erie* decision. Delta has not cited us to any subsequent California decisions criticizing, distinguishing, or modifying the *Douglas* case. Therefore, *Douglas* remains the latest, most authoritative expression of California law applicable to the facts of this case. It is controlling for our purposes. *See* Ford Motor Co. v. Mathis, 322 F.2d 267, 269 (5th Cir. 1963).

Fourth, Delta contends that even if the court below correctly determined that the exculpatory clause is valid under the law of California, the clause violates the public policy of Georgia and should not be enforceable as a defense to Delta's complaint by a federal court sitting in Georgia.

To support this argument, Delta cites only a Georgia statute similar to Cal. Civ.Code § 1668.[8] The argument fails to carry the point for the same reasons that made the position untenable as a matter of California public policy.

Finally, as to the dismissal of the strict liability count only, Delta makes this argument: The count based upon strict liability in tort is not barred by the exculpatory clause (even if valid) because one of the basic reasons for the development of the theory of strict liability is to transcend technical bases for denying liability where the product involved is unreasonably dangerous to the public. Contractual attempts to restrict liability are therefore immaterial in strict liability cases.

Although McDonnell argues in response to this that strict liability does not apply to factual circumstances such as these, we do not have to rule on this argument because we agree with McDonnell's contention that the exculpatory clause is broad enough to include the concept of strict liability in tort.

Although the California Court of Appeal did not expressly mention strict liability in the earlier Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc. case, the holding by that Court is broad enough to encompass strict liability. In reaching its decision, the California Court cited and discussed Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963), the landmark California case dealing with the concept of strict liability in tort, and expressly held: "Even though disclaimer clauses are to be strictly construed, still we find that this clause covers not only contractual warranty liability but also tort liability." 238 Cal.App.2d at 101, 47 Cal.Rptr. at 522. The doctrine of strict liability is a tort concept, and the statement by the California Court that the exculpatory clause is broad enough to encompass "tort liability" as well as other forms of liability clearly indicates that strict tort liability has been disclaimed. Any other conclusion would emasculate the basic purpose of the Warranty Article and exculpatory clause.

Finding no persuasive arguments that militate against following this remarkably similar California case, we affirm the dismissal of the two counts in negli-

8. Ga.Code Ann. § 20–504 provides:
 A contract which is against the policy of the law cannot be enforced; such are contracts tending to corrupt legislation or the judiciary, contracts in general restraint of trade, contracts to evade or oppose the revenue laws of another country, wagering contracts, contracts of maintenance or champerty. . . .

gence and strict liability as being barred by the exculpatory clause in the contract under the authority of Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc., *supra*.

Affirmed.