### In re AIR CRASH DISASTER AT DETROIT METROPOLITAN AIRPORT ON AUGUST 16, 1987.

**Carlos VALASQUEZ, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., a foreign corporation, and McDonnell Douglas Corporation, a foreign corporation, Defendants.**

MDL No. 742.
Civ. A. No. 87–CV–73263–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 11, 1989.

See also 750 F.Supp. 793.

Richard Schaden, Arnold D. Portner, Gregory W. Stine, Birmingham, Mich., and Gary M. Bloom, Livonia, Mich., for plaintiff.

Carroll E. Dubuc, Washington, D.C. and Leonard E. Nagi, Detroit, Mich., for defendant, Northwest Airlines, Inc.

John J. Hennelly, Los Angeles, Cal., Donald E. Shely, and Kathryn J. Humphrey, Detroit, Mich., for defendant, McDonnell Douglas Corp.

## ORDER

JULIAN ABELE COOK, JR., Chief Judge.

On July 17, 1989, the Defendant, McDonnell Douglas Corporation (MDC), filed a motion for a partial summary judgment which challenges some of the cross-claims that had been raised by the Defendant, Northwest Airlines, Inc. (Northwest), on the basis of an exculpatory clause within the purchase agreement covering the sale of the accident aircraft. In reliance upon this exculpatory clause, MDC requests the Court to dismiss Northwest's cross-claims which sound in negligence, violation of law, negligent misrepresentation, gross negligence, breach of warranty, and strict liability.[1] For the following reasons, MDC's motion for a partial summary judgment is granted.[2]

## I

On May 1, 1980, MDC sold the accident aircraft, a DC-9 series aircraft which bore registration number N312RC to Northwest.[3] Under the terms of the purchase agreement, MDC warranted to Northwest that the parts and components on the accident aircraft would be free from defects. Significantly, this warranty was limited to the repair or replacement of any defective part or component within the subject aircraft. *See* Purchase Agreement DAC 80-11-D, Exhibit C (Aircraft Support Services).[4]

1. The instant motion and this Order are applicable only to the following cases:

| | |
|---|---|
| Acker | 89–CV–71636–DT |
| Acker | 89–CV–71205–DT |
| Bagnato | 89–CV–72082–DT |
| Bagnato | 89–CV–72096–DT |
| Cichan | 89–CV–71684–DT |
| Dority | 88–CV–72169–DT |
| Haas | 89–CV–70962–DT |
| Kimmel | 88–CV–75012–DT |
| Rademacher | 88–CV–72170–DT |
| Rademacher | 88–CV–72171–DT |
| Thrasher | 89–CV–71784–DT |
| Blakley | 88–CV–71919–DT |
| Blakley | 88–CV–74894–DT |
| Boersma | 88–CV–71545–DT |
| Brown | 88–CV–71272–DT |
| Grigg | 89–CV–71637–DT |
| Grigg | 87–CV–74582–DT |
| Grigg | 88–CV–70238–DT |
| Johnson | 88–CV–72040–DT |
| Johnson | 88–CV–74893–DT |
| Jones | 87–CV–74681–DT |
| Pearson | 88–CV–71871–DT |
| Ross | 88–CV–74895–DT |
| Ross | 88–CV–71914–DT |
| Terpstra | 88–CV–71924–DT |
| Wennan | 88–CV–70702–DT |
| Zell | 88–CV–73572–DT |
| Zell | 88–CV–71920–DT |
| Atkins | 87–CV–73264–DT |
| Atkins | 88–CV–70337–DT |
| Beddingfield | 89–CV–71459–DT |
| Davis | 87–CV–74011–DT |
| Davis | 87–CV–74010–DT |
| Favio | 87–CV–73275–DT |
| Galloway | 88–CV–71347–DT |
| Hatfield | 89–CV–71460–DT |
| Rhan | 88–CV–70338–DT |
| Schweitzer | 88–CV–72737–DT |
| Thomas | 87–CV–74012–DT |
| Cook | 89–CV–71310–DT |
| Morris | 89–CV–70326–DT |
| Roundy | 88–CV–74091–DT |
| Roundy | 88–CV–72186–DT |
| Roundy | 89–CV–71276–DT |
| Elfering | 88–CV–70680–DT |
| Kahle | 88–CV–70526–DT |
| Shaffer | 88–CV–74651–DT |

2. In its pleadings, MDC apparently does not seek to have this Court construe the exculpatory clause to preclude Northwest's claims of intentional and/or fraudulent misrepresentation and common law fraud.

3. The sale of the DC-9 at issue was actually consummated between MDC and Northwest's predecessor corporation, Republic Airlines, Inc. However, Northwest does not maintain that it is not bound to the terms of the purchase agreement.

4. The following paragraph appeared in capital letters within the body of the purchase agreement and Exhibit C which was incorporated into the purchase agreement:

B. THE WARRANTY AND SERVICE LIFE POLICY PROVIDED IN PART I. OF EXHIBIT "C" AND THE OBLIGATIONS AND LIABILITIES OR SELLER UNDER SAID WARRANTY AND SERVICE LIFE POLICY ARE EXCLUSIVE AND IN LIEU OF, AND BUYER HEREBY WAIVES, ALL OTHER REMEDIES WARRANTIES, GUARANTEES OR LIABILITIES, EXPRESS OR IMPLIED, WITH RESPECT TO

The accident aircraft was ultimately delivered by MDC on December 8, 1982 and thereafter used by Northwest until the crash on August 16, 1987. Subsequent to the accident and the commencement of this litigation, Northwest cross-complained against MDC for contribution and indemnity on the bases of theories of, *inter alia*, negligence, negligent misrepresentation, strict liability in tort, and breach of warranty. In the motion at bar, MDC generally maintains that the exculpatory clause within the purchase agreement between the parties precludes Northwest from pursuing the foregoing theories of liability.[5]

## II

The first issue, which has been presented to this Court, concerns the effect, if any, that should be given to the express choice of law provision within the purchase agreement.[6] If that choice of law clause is valid, the law of California will govern the interpretation and effect of the exculpatory clause.

It has been long established that a federal court, in a diversity litigation, must apply the law of the forum state and its choice of law rules. *Klaxton Co. v. Senator Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1942); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As this Court has previously noted, the Michigan Supreme Court recognizes the validity of contractual choice of law provisions if (1) there is a "reasonable relationship" between the chosen state and the transaction, and (2) its enforcement would not offend public policy considerations. *Snider v. Lone Star Art Trading Co., Inc.,* 672 F.Supp. 977, 982 (E.D.Mich.1987), *aff'd,* 838 F.2d 1215 (6th Cir.1988); *see also Parets v. Eaton Corp.,* 479 F.Supp. 512 (E.D.Mich.1979).

In response, Northwest initially contends that the enforcement of the choice of law clause, which has been advocated by MDC, would violate the public policy of Michigan.[7] Northwest apparently acknowledges that should the law of California be applicable to this controversy, the exculpatory clause within the parties' purchase agreement could be construed to preclude its claims for indemnity against MDC

---

EACH AIRCRAFT, PRODUCT AND ARTICLE DELIVERED HEREUNDER OR ACQUIRED OR OBTAINED IN ANY MANNER FROM ANY OTHER OPERATOR OR SOURCE, ARISING BY LAW OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY OBLIGATION OR LIABILITY OF THE SELLER ARISING FROM NEGLIGENCE OR WITH RESPECT TO FITNESS, MERCHANTABILITY, LOSS OF USE, REVENUE OR PROFIT OR CONSEQUENTIAL DAMAGES). THE WARRANTY AND SERVICE LIFE POLICY SHALL NOT BE EXTENDED, ALTERED OR VARIED, EXCEPT BY A WRITTEN INSTRUMENT SIGNED BY THE SELLER AND BUYER.

In addition, Article 15(b) of the purchase agreement between MDC and Northwest provided in part:

B. This Agreement shall be construed and performance thereof shall be determined according to the laws of the state of California, U.S.A.

**5.** MDC represents that this motion pertains only to those cases in which Northwest has declined to offer stipulations not to contest liability to the Plaintiffs. This representation was made because MDC waived any defenses that were available to it under the exculpatory clause in question in those cases in which Northwest offered a stipulation not to contest liability.

**6.** Courts will refuse to honor an express choice of law provision if (1) "[a] choice of law by the parties [would] ... secure application of a law that would not otherwise be applicable to sustain a contract against the charge of usery," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 203 comment (e) (1971), or (2) "the choice of law provision is contained in an 'adhesion' contract, namely one that is drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms," *id.* § 187 comment (b). Neither of these two exceptions to the general rule of enforcing choice of law clauses is at issue in this case.

**7.** Northwest also maintains that the express choice of law clause is irrelevant to the merits of the instant dispute because it "is limited to claims pursuant to the contract." This Court does not agree. In the motion *sub judice,* the terms and scope of the exculpatory clause must be construed to determine whether Northwest is contractually precluded from advancing certain theories of liability against MDC. The choice of law provision clearly states that the terms of the purchase agreement "shall be construed" in accordance with the law of California. Therefore, the plain language of the choice of law clause contradicts Northwest's position on this matter.

if the latter is found to be culpable at the liability trial.[8] Should this occur, Northwest maintains that the legislative purpose behind the Michigan Contribution Statute, M.C.L.A. § 600.2925a which reflects a policy in favor of an equal apportionment of liability among joint tortfeasors, would be offended.

■ This Court finds no merit in Northwest's position. Northwest supplies no case authority which would establish or even suggest that the Michigan courts would not interpret the exculpatory clause in this case to bar its claims against MDC for indemnity and contribution. Put another way, Northwest has not shown that the substantive law of California and Michigan differ concerning the standards of constructing contractual exculpatory clauses. Absent any variation between the substantive laws of these two states, it does not follow that the application of California substantive law would violate a public policy of Michigan. Indeed, even a variation between the substantive law of the forum and the chosen state would not—standing alone—render the choice of law provision ineffective. E.F. SCOLES & P. HAY, CONFLICT OF LAWS § 18.4 (1984).

■ This Court finds nothing within the case law of the state of Michigan which would suggest that it would not honor the contractual choice of law provision at issue in this case. Therefore, the law of the

State of California will be applied by this Court for the purpose of construing the terms of the exculpatory clause and determining its effect, if any, on Northwest's cross claims against MDC.[9] *See Delta Air Lines, Inc. v. McDonnell Douglas Corporation,* 503 F.2d 239, 243 (5th Cir.1974) (determined that Georgia choice of law rules would respect the parties' contractual forum selection clause and applied California law to determine effect of exculpatory clause).

### III

California courts have often had occasion to consider the legal effect of MDC's exculpatory clause.[10] *In Delta Air Lines, Inc. v. Douglas Aircraft Co.,* 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (Cal.Ct.App.1965), the California Court of Appeals was asked to determine whether the exculpatory clause insulated the Defendant from any breach of warranty and negligence allegations by Delta Air Lines. These theories of liability had been raised by Delta in an effort to recover its costs that had been expended in connection with the repair of a recently delivered DC-7 aircraft.

The *Delta* court determined that the exculpatory clause prevented the airline company from pursuing a civil action against Douglas Aircraft under the theories of negligence or breach of warranty. Thereafter, the Court upheld the validity of the excul-

---

**8.** Northwest does not contend that California, the state law chosen under the choice of law provision, is not reasonably related to the sale of the aircraft. Indeed, such a contention would have been incredulous given MDC's representation that California served as the place (1) of negotiation, execution, and performance of the contract, and (2) of ultimate delivery of the accident aircraft.

**9.** With regard to those claims that were initiated in Arizona, California, and Florida, transferred to this judicial district and subsequently consolidated for a joint trial which would address all liability issues, this Court notes that it must apply the choice of law rules of the transferor forum. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *In re Bendictin Litigation,* 857 F.2d 290, 306 (6th Cir.1988). However, the courts of Arizona, California and Florida, like the Michigan courts, generally respect and enforce forum selection clauses that

pass the reasonably related and public policy requirements. *See e.g., In re Estate of Levine,* 145 Ariz. 185, 700 P.2d 883 (Ariz.App.1985); *Smith, Valentino & Smith, Inc. v. Superior Court,* 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206 (1976); *Bos Material Handling v. Crown Controls Corp.,* 137 Cal.App.3d 99, 186 Cal.Rptr. 740 (Cal.Ct.App.1982); *Burroughs Corp. v. Suntogs of Miami, Inc.,* 472 So.2d 1166 (Fla.1985); *Continental Mortgage Investors v. Sailboat Key, Inc.,* 395 So.2d 507 (Fla.1981).

Therefore, this Court concludes that all of the involved states would apply California law to determine the legal effect to be given the exculpatory clause within the purchasing agreement.

**10.** Although the clauses previously construed do not exactly parrot the terms of the exculpatory clause at issue, Northwest does not contend, and this Court does not find, that any legal significance can be attached to these differences.

patory clause in the face of challenges based on public policy grounds and concluded that the purchase agreement took on an element of a contract of adhesion:

> In short, all that is herein involved is the question of which of two equal bargainers should bear the risk of economic loss if the product sold proved to be defective. Under the contract before us, Delta (or its insurance carrier if any) bears that risk in return for a purchase price acceptable to it; had the clause been removed, the risk would have fallen on Douglas (or its insurance carrier if any), but in return for an increased price deemed adequate by it to compensate for the risk assumed. We can see no reason why Delta, having determined, as a matter of its business judgment, that the price fixed justified assuming the risk of loss, should now be allowed to shift the risk so assumed to Douglas, which had either agreed to assume it not been compensated for such an assumption.

*Id.* at 104, 47 Cal.Rptr. at 524 (footnote omitted).

In *Philippine Airlines, Inc. v. McDonnell Douglas Corp.*, 189 Cal.App.3d 234, 234 Cal.Rptr. 423 (Cal.Ct.App.1987), the California Court of Appeals extended the reasoning of *Delta* and concluded that the exculpatory clause precluded the airline company from seeking indemnity against the defendant for payments made to personal injury claimants. In *Philippine*, a DC–10 aircraft, while being operated by Philippine Airlines, Inc. (PAL), apparently failed to properly take-off. As a result of the aborted take-off attempt, a number of the aircraft's passengers sustained personal injuries and, thereafter, filed personal injury claims against PAL. In turn, PAL filed a cross-claim against the defendant in which it sought indemnity based on the alleged negligent manufacture of the aircraft.

The *Philippine* court rejected the air carrier's argument that the exculpatory clause does not encompass its personal injury indemnity claims and stated:

> [The] wording [of the exculpatory clause is] unambiguous and its meaning [is]

clear. In it, [the Defendant's] liability was limited to the remedies set forth in the agreement. [Defendant] would not otherwise be liable for loss caused by its negligence, which loss would ordinarily include payment of claims filed against [Philippine Airlines] as a result of [the Defendant's] negligence. Moreover, the clause further provides that, except as otherwise stated in the agreement, [Defendant] would not be liable for consequential damages, a term defined by the Commercial Code as including "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty." (Com. Code, § 2715).

> . . . .

> ... Thus, under the terms of the agreement, [Defendant] is exempt from *any* loss arising from its negligence, whether or not that loss could be defined as "consequential damages," and whether or not it represented payments for personal injury damages.

*Id.* at 239, 234 Cal.Rptr. at 424–25 (emphasis in original). Thereafter, the Court concluded that the disclaimer barred PAL's right to recover indemnity from the Defendant under a theory of negligent conduct.

■ In the instant case, Northwest apparently concedes that, if California law applies, its claims for indemnity against MDC's claims which sound in negligence, breach of warranty, and strict liability in tort are barred by the terms of the disclaimer. However, Northwest vigorously maintains that the exculpatory clause does not bar its claims for contribution.

This Court does not agree. The *Philippine* decision clearly suggests that the California courts would deem claims for contribution barred to the same extent that claims for indemnity are barred under the exculpatory clause. In addressing the airlines' argument that the disclaimer does not preclude claims for indemnity, the *Philippine* court determined that the exculpa-

tory clause "simply and clearly excludes any and all claims PAL might have against [the Defendant] *whatever their genesis,* other than expressly permitted in the parties' agreement." *Id.* at 238, 234 Cal.Rptr. at 425 (emphasis added). The Court also noted that PAL was not attempting to obtain recovery against the manufacturer based on damages that had been directly incurred by it but was attempting to recover a monetary loss which resulted from its payment of damages to personal injury claimants. This distinction evidently did not persuade the Court that the clause would not apply with equal force to direct claims against the Defendant as well as indemnity claims.

An analysis of *Philippine* has led this Court to conclude that the courts of California would interpret the exculpatory clause in this case as preventing Northwest from pursuing claims sounding in negligence, breach of warranty or strict liability, regardless of the vehicle through which recovery is sought. While there are important legal distinctions between the concepts of contribution and indemnity, these differences are insignificant to the determination of the legal effect of the exculpatory clause at issue. Both contribution and indemnity are means through which Northwest, if adjudicated to be liable, desires to shift any monetary loss incurred as a result of paying damages to the claimants to MDC. The terms of the exculpatory clause in the parties' purchase agreement simply prohibits Northwest from recovering any loss that results from MDC's negligence or breach of warranty. Therefore, Northwest's argument, which posits that the California courts would not interpret the exculpatory clause to par its prayer for contribution, must be rejected.[11]

Northwest also contends that "[t]o the extent *Philippine Airlines* can be read to apply to Northwest's claims for contribution, Northwest respectfully submits that the case was incorrectly decided." Northwest Response Brief at 6. However, without regard to the soundness of Northwest's critique of *Philippine,* the Sixth Circuit Court of Appeals has clearly defined the

---

11. Northwest also maintains that MDC's disclaimer should not be interpreted to preclude claims of contribution since this is not expressly provided in the exculpatory clause. However, this argument was specifically addressed and rejected by the California Court of Appeals in *Philippine,* 189 Cal.App.3d at 237–38, 234 Cal. Rptr. at 424–25.

Northwest further argues that the terms of the disclaimer are not "exceedingly clear and specific" on the issue of contribution and, therefore, should be "strictly construed against the party relying on them." Northwest's Response Brief at 3–6. This Court recognizes, as did the courts in *Delta* and *Philippine,* that (1) the California courts strictly construe contract terms which limit or exclude liability, and (2) any ambiguities should be resolved against the party who attempts to invoke its protection. *See Conservatorship of Link,* 158 Cal.App.3d 138, 205 Cal. Rptr. 513 (1984); *Celli v. Sports Car Club of America, Inc.,* 29 Cal.App.3d 511, 105 Cal.Rptr. 904 (1972). However, the *Philippine* court also addressed this identical argument in the context of an indemnity claim and concluded that "notwithstanding the application of these strict rules of interpretation," the express terms of the exculpatory clause preclude any suit against the manufacturer, whatever its genesis. *Philippine,* 189 Cal.App.3d at 237–38, 234 Cal.Rptr. at 424– 25. This reasoning applies with equal force to Northwest's contribution claims in the case at bench.

Finally, Northwest also contends that "[a]llowing [the subject] Exculpatory Clause to bar [any] claims for contribution would be inconsistent with … product liability law," since it would be required to absorb all liability which may be apportioned to MDC whose incentive to improve the safety of its products would be greatly lessened. Again, the *Philippine* court was confronted with and rejected a similar argument based on the following reasoning:

> Given … the realities of litigation, and the possibility that a carrier might have insufficient resources to cover what might be extensive liability should an aircraft malfunction, it would make little economic sense for a manufacturer to place on the market a defective product on the belief that it somehow would be insulated from the personal injury claims of passengers. Moreover, and aside from its potential liability to passengers, a manufacturer whose defective products caused its customers to be sued would not long remain in business. And a manufacturer such as MDC is still answerable to the Federal Aviation Commission. We are thus of the opinion that the argued "disincentive" to produce safe aircraft resulting from a finding that the disclaimer of liability is valid, is largely illusory.

*Id.* at 242, 234 Cal.Rptr. at 427–28 (footnote omitted).

role of a federal district court in diversity cases:

[W]here a state's highest court has not spoken on a precise issue, a federal court, sitting in diversity case, may not disregard a decision of the state appellate court on point, "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1140 (6th Cir.1986) (*quoting Clutter v. Johns–Mansville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981)). In *Delta Air Lines, Inc. v. McDonnell Douglas Corp.*, 503 F.2d 239, 245 (5th Cir.1974) (citation omitted), the air carrier requested a federal court to deviate from the law of California in a diversity action. The Fifth Circuit Court of Appeals responded:

What may be more important in addressing the [airline's] contention is that under *Erie R.R. v. Tompkins, supra,* we are bound to follow state law, whether or not we agree with the reasoning upon which it is based or the outcome which it dictates. This is the ultimate significance of the *Erie* decision. [The airlines] has not cited us to any subsequent California decision criticizing, distinguishing, or modifying the [*Delta*] case. Therefore, [*Delta*] remains the latest, most authoritative expression of California law applicable to the facts of this case. It is controlling for our purpose.

In the case at bench, Northwest has not provided this Court with any evidence that the California Supreme Court would modify or reverse the decision of the California Court of Appeals in *Philippine*. Therefore, on the basis of *Delta* and *Philippine*, this Court must conclude that Northwest's claims for indemnity and contribution based on theories of negligence,[12] breach of warranty and strict liability, are barred by the exculpatory clause within the purchase agreement. *See Airlift International, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267, 269 (9th Cir.1982) (clause barred

claims of negligence, breach of warranty, and strict liability); *Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.*, 677 F.2d 771 (9th Cir.1982) (clause barred claim of negligence); *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2nd Cir.1980) (clause barred claims of negligence, negligent misrepresentation, breach of warranty, and strict liability); *Delta*, 503 F.2d 239 (clause barred claims of negligence and strict liability); *Delta*, 238 Cal.App.2d 95, 47 Cal.Rptr. 518 (clause barred claims of negligence and breach of warranty).

■ Northwest also asserts that its claims, which are based on alleged violations of Federal Aviation Administration (FAA) regulations by MDC, are not barred by the disclaimer at issue. Indeed, a California statute prohibits the creation of a contractual provision that protects a party from "responsibility for his ... own violation of law." CAL.CIV.CODE § 1668.

Although Northwest did not plead a cause of action based on violation of a statute or regulation by MDC, this Court concludes that the exculpatory clause, which is now under scrutiny, would bar such a claim even if it had been pled. The preclusion of this Northwest claim would not fully vindicate MDC from the adverse repercussions that could result from a violation of federal aviation regulations:

The exculpatory clause does not permit MDC to violate the federal regulations with impunity; it merely bars suit *by [the airlines]* on this ground. Other sanctions remain in place. As we have said in a similar case, "nothing inhibits the operation of the regulation[s] in question through [passengers'] suits ... or sanctions imposed by the Federal Aviation Administration."

*Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1527 (9th Cir. 1987) (citations omitted) (emphasis in original); *see Airlift International, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267 (9th Cir.1982); *Delta*, 503 F.2d 239, *cert.*

---

**12.** The *Delta* court construed the exculpatory clause to bar claims of negligence in tort, regardless of whether the negligence alleged was active or passive. *Delta*, 238 Cal.App.2d at 101, 47 Cal.Rptr. at 522.

*denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

To the extent that MDC violated any federal aviation regulations, it may be held accountable in the form of civil judgments and/or FAA sanctions. The mere fact that Northwest is contractually precluded from similarly pursuing MDC does not violate the spirit of section 1668. Thus, to the extent that Northwest presented a cause founded on a violation of law, which is presumably a claim of negligence per se, this claim against MDC is precluded by the exculpatory clause.

■ Northwest further maintains that its claim of negligent misrepresentation against MDC is not precluded by the disclaimer. In support of its position, Northwest contends that a claim of negligent misrepresentation is tantamount to a claim of actual fraud.

Once again, this Court disagrees with the argument that has been advanced by Northwest. Clearly, claims of an intentional misrepresentation or deceit, in which an intent to deceive, mislead, or convey a false impression must be proven, would fall outside the scope of the exculpatory clause. With regard to negligent misrepresentation, this intent to deceive or "scienter" is not at issue. Instead, a claim of negligent misrepresentation may lie in those situations in which "[a] representation made with an honest belief in truth ... [is adjudicated] negligent, because of lack of reasonable care in ascertaining the facts or in the manner of expression, or absence of skill and competence required by a particular business or profession." W. PROSSER,

LAW OF TORTS § 107 (4th ed. 1979). Any claim by Northwest that is based on negligent conduct by MDC, in which the latter is alleged to have failed to exercise the requisite standard of reasonable care attributed to it, is contemplated within the literal terms of the exculpatory clause.

Therefore, this Court agrees with the conclusion by the Court of Appeals for the Second Circuit in *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir.1980) and finds that Northwest's claim of negligent misrepresentation, like any other claim of misfeasance or malfeasance sounding in negligence, is barred by the exculpatory clause contained within the purchase agreement.[13]

■ Finally, Northwest contends that its claims based on gross negligence are not barred by the disclaimer. While it is uncertain whether Northwest pled such a claim, or if it did, whether it could maintain such a cause against MDC, this Court concludes that a California court would construe the exculpatory clause to preclude the gross negligence claim.[14]

In *Continental Insurance Co. v. American Protection Industries,* 197 Cal.App.3d 322, 242 Cal.Rptr. 784 (Cal.Ct.App.1987), the Court abolished the distinction between gross negligence and ordinary negligence. Due to the advent of the comparative negligence doctrine, the *Continental* Court concluded that the purpose of categorizing negligence into relative degrees of misconduct "has been radically diminished." *Id.* at 330, 242 Cal.Rptr. at 789.

---

**13.** Northwest cites a portion of the *Tokio* opinion in which the Second Circuit Court of Appeals expressed the belief that the disclaimer bars a claim of negligent misrepresentation to the extent that it is not accompanied by a violation of law in contravention of section 1668 of the California Civil Code. It is the position of Northwest that *Tokio* is inapposite to the case at bench because a violation of the federal aviation regulations by MDC has also been alleged. Northwest's allegations of federal aviation regulation violations by MDC—without more—simply do not violate the terms of section 1668 or void the provisions of the exculpatory clause. Therefore, this Court rejects Northwest's attempt to distinguish the *Tokio* case on this basis.

**14.** Northwest's Third Party Complaint and Cross Claims, which was filed on February 28, 1989, includes four counts that are specifically directed to MDC. *See* Amended Third-Party Complaint and Cross Claim Against MDC, Texas Instruments, Inc., United States of America, and National Car Rental Systems, Inc. at 34–42 (counts 7–10). Even though Northwest filed a four count Third Party Complaint against MDC, it currently contends that it has eight claims. This Court presumes that the references to "willful" and "wanton" conduct serves as the basis for Northwest's claim of gross negligence.

Given that the California courts afford no legal distinction between the concepts of ordinary negligence and gross negligence, it is apparent that claims of gross negligence would be subsumed within the terms of the clause which preclude claims of negligence. Therefore, this Court concludes that Northwest's claim of gross negligence, to the extent that it may pursue such a claim, is barred by the terms of the exculpatory clause.

In summary, this Court concludes that the exculpatory clause precludes Northwest from pursuing its claim of indemnity and contribution against MDC which sound in negligence, violation of law, negligent misrepresentation, gross negligence, breach of warranty, and strict liability in tort. However, nothing within the terms of the exculpatory agreement between the parties shall impair the rights of the claimants to recover against MDC or Northwest. Therefore, for the foregoing reasons, MDC's motion for a partial summary judgment is granted.

IT IS SO ORDERED.